656 So.2d 1085 (1995)
STATE of Louisiana,
v.
Gary SAMPSON.
No. 95-KA-58.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 1995.
*1086 Harry J. Morel, Jr., Emile St. Pierre, Dist. Atty.'s Office, Parish of St. Charles, Hahnville, for plaintiff/appellee, State.
Mark A. Marino, Destrehan, for defendant/appellant, Gary Sampson.
Before BOWES, GAUDIN and WICKER, JJ.
BOWES, Judge.
Defendant, Gary Sampson, appeals his conviction for extortion. We affirm as follows.
In 1992, the defendant, Gary Sampson, was charged along with co-defendant, Michael Liker, with one count of conspiracy to commit extortion and nine counts of extortion, violations of La.R.S. 14:26 and 14:66, respectively. When arraigned on October 22, 1992, the defendant entered a plea of not guilty to all counts.
On April 18, 1994, the trial court quashed three counts of extortion and denied the defendant's motion to suppress a statement he gave to the police. The defendant proceeded to trial before a jury on April 19, 1994 on the remaining seven counts of extortion. On the second day of trial, on motion of the defendant on the basis that no evidence of extortion against one victim was presented, the court dismissed one of the remaining counts of extortion. Subsequently, the jury returned a verdict finding the defendant guilty of one count of extortion and not guilty on all other counts. On July 6, 1994, the trial court denied the defendant's motions for judgment of acquittal and motion for new trial; and after the defendant waived sentencing delays, the trial court sentenced the defendant to 27 months at hard labor. From this conviction defendant appeals.

FACTS
The sheriff's office for the Parish of St. Charles received a number of complaints regarding the defendant from several motorists in that parish. The incidents complained of took place between November, 1991 and April, 1992, and involved extortion of money by a black police officer who was stopping vehicles occupied by Asians as they traveled on Highway 90 in St. Charles Parish. On every occasion, except one, the black officer was assisted by a white police officer.
The only incidents which are before us involve the detention by the officers of Tuc Van Vo, who was stopped for speeding on two separate occasions by the same two officers. In the first week of January, 1992, the black officer stopped a vehicle occupied by Tuc Van Vo and informed him that he was speeding. The officer told Tuc Van Vo that he would have to pay $150.00 for the ticket. When Tuc Van Vo refused to pay, the officer stated that he would be taken to the "office." Because he didn't know where the "office" was located and because he was afraid, Tuc Van Vo paid the officer $150.00, presumably for the ticket. Tuc Van Vo subsequently signed the ticket as instructed, and although one of the officers indicated that it would be mailed to him in a couple of weeks, he never received it. This incident formed the basis of Count III against defendant. While the victim positively identified Michael Liker as the white officer at a pre-trial identification, he could not positively identify the defendant, at either the pre-trial identification or at the trial, as the black officer.
The second incident occurred on April 9, 1992 and formed the basis of Count V. While heading to New Orleans on Highway 90 in his white Dodge van, Tuc Van Vo was stopped again at approximately 10:00 a.m. by *1087 a black officer in a marked police unit. The stop occurred near the Sheriff's Office Third District Headquarters. He testified that after being ordered out of his van, Tuc Van Vo approached the patrol unit and the officers advised him that he was speeding. Shortly thereafter, a white officer arrived on the scene and that policeman talked to the black officer.
Tuc Van Vo recognized both officers as the same ones who had stopped him in January of 1992. As in January, the black officer was wearing blue jeans and a black tee shirt and the white officer was wearing his uniform.
Tuc Van Vo handed his driver's license to the black officer, but the officer returned it to him. The white officer stated that a ticket would be written and one of the officers indicated that the ticket "must be paid." Tuc Van Vo replied that he had $60.00, but the white officer didn't believe him. Subsequently, the white officer determined that the ticket would cost $101.00 and the black officer checked the victim's pocket and removed $101.00 from the cash therein. Tuc Van Vo then signed the ticket, but it was not given to him.
During the stop, Tuc Van Vo asked the black officer for his name and the officer stated that his name was "Charles." At trial he was unable to positively identify the defendant as the black officer. On cross-examination was the following exchange:
Q. Was it him?
A. I don't know. I don't remember.
Q. What's that?
A. No.
Q. You would remember that? Would you?
A. I don't remember.
Q. You don't know if this man stopped you in April or January?
A. No.
Q. Do you remember if that was the same man?
A. No. Because two years [is a] long time ago, you know, I don't remember that.
Officer Robert Dale testified that at a pre-trial identification Tuc Van Vo positively identified Officer Michael Liker as the white officer and he tentatively identified Officer Charles Smothers as the black officer.
In a taped statement, which was played for the jury, the defendant related the following: On April 9, 1992 he was at home on vacation when he received a telephone call from Michael Liker, who was on duty and therefore in uniform that day. Officer Liker indicated that he was in the area of Highway 90 near the Sheriff's Office Third District Headquarters conducting traffic stops and that he wanted the defendant to assist him. The defendant, who was wearing blue pants, a black shirt and a cap headed to that area in his marked unit and met Officer Liker that morning.
While the defendant was on the scene, Officer Liker stopped two or three vehicles. The defendant specifically remembered the stopping of a van which was occupied by an oriental male. The defendant stated that during this particular stop, he sat in his unit "most of the time."

ASSIGNMENT OF ERROR NUMBER ONE
The trial court erred in denying the defendant's motion for judgment of acquittal when there existed a reasonable doubt as to the defendant's guilt.

ANALYSIS
The defendant contends that the trial court erred in denying his motion for judgment of acquittal in that the evidence was insufficient to support his conviction of one count of extortion, that the verdicts were inconsistent and that the victim failed to positively identify the defendant.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the often-quoted standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)that the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, is sufficient to convince a rational trier of fact that all of the elements of the crime have been proved beyond a reasonable doubt. *1088 State v. Captville, 448 So.2d 676 (La.1984). The standard has been codified in our law in La.C.Cr.P. art. 821.
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, 488 So.2d 965 (La. 1986).
The defendant argues that the jury's verdicts of guilty of Count V but not guilty of Count III are inconsistent. The defendant also argues that the element of communication of a threat and the identity of the defendant were not proven beyond a reasonable doubt.
At the outset, after examining the record, we find that the verdicts are not inconsistent considering the evidence presented. We find that the jury could have determined rationally that the defendant was guilty of Count V, yet not of Count III. In his statement to the sheriff's office, the defendant admitted that he was on the scene of the stop of Tuc Van Vo on April 9 and was dressed in the same type and color of clothing described by the victim. Additionally, defendant recalled the stop of a van on the day in question and that it was driven by an oriental male. Thus the state presented a stronger case against the defendant in Count V than in Count III.
Moreover, even though Tuc Van Vo testified that both stops involved the same black officer, it is the province of the jury to assess the credibility of witnesses and a reviewing court accords great deference to the jury's decision to accept or reject the testimony of witnesses in whole or in part. State v. Tate, 25,765 (La.App.2d Cir. 2/23/94), 632 So.2d 1213. In Count V, the jury apparently accepted the testimony of the victim in combination with the statement of the defendant to find Sampson guilty of extortion which they had every right to do.
Therefore, we hold that the alleged inconsistency in the verdicts is not, of itself, sufficient to mandate reversal of the defendant's conviction.
As the courts have noted, we should not be concerned with possible inconsistencies in verdicts, as long as the evidence is sufficient under the standard of review of Jackson v. Virginia, infra, to support the guilty verdicts. State v. Irvine, 535 So.2d 365 (La.1988), citing U.S. v. Powell, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); and State v. Gachot, 609 So.2d 269 (La.App. 3 Cir.1992); U.S. v. Powell, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); State v. Caldwell, 616 So.2d 713 (La.App. 3 Cir.1993).
Viewed in the light most favorable to the prosecution, we find the evidence, consisting of the statement of the defendant and the testimony of the victim, sufficient to support the conviction of extortion under Count V.
La.R.S. 14:66 defines the crime of extortion as follows:
Extortion is the communication of threats to another with the intention thereby to obtain anything of value or any acquittance, advantage, or immunity of any description. The following kinds of threats shall be sufficient to constitute extortion:
* * * * * *
(2) A threat to accuse the individual threatened or any member of his family or any other person held dear to him of any crime; ...
The testimony of Tuc Van Vo established that he was stopped and advised that he was speeding, which is a misdemeanor offense,[1] that a ticket would be written, and that he would be taken to the "office." Furthermore, he was informed that he must pay for the ticket which was set at the price of $101.00 and that amount of money was taken *1089 from his person. The manner in which the money was seized by the officer, a person clothed with apparent authority to carry out the threat (of accusation of a crime), lends much weight to the finding of extortion. Bearing in mind the fact that the victim is obviously not a native of this country and has difficulty with the English language, it is evident and logical that the jury could find that the action of the officer communicated a threat to the victim, notwithstanding his testimony that he was not verbally threatened with imprisonment if he refused to pay the ticket. Viewing that evidence in the light most favorable to the prosecution, a rational trier of fact could have found all of the elements of extortion beyond a reasonable doubt.
The defendant also asserts that his identity as the perpetrator was not proven considering that Tuc Van Vo was unable to identify him at a pre-trial identification and at trial.
Encompassed in proving the elements of the offense is the necessity of proving the identity of the defendant as the perpetrator. Employing the Jackson standard set forth, supra, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Duvio, 511 So.2d 821 (La.App. 5 Cir.1987).
Although Tuc Van Vo tentatively identified someone other than the defendant at a pre-trial identification, and although he was unable to identify the defendant at trial, other evidence at the trial negates the reasonable probability of misidentification. The defendant in his own statement placed himself at the scene of the stop of April 9 wearing the clothes and driving a marked police unit, all as described by Tuc Van Vo in his testimony. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the defendant had been sufficiently identified as the perpetrator.
Accordingly, in our opinion, the evidence, taken as a whole, is sufficient to support a conviction of the defendant for extortion. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
The trial court failed to properly and legally sentence the defendant.

ANALYSIS
The defendant contends that the trial court did not sentence him according to law. In support of this contention, the defendant argues that the court failed to give him credit for time served as mandated by La.C.Cr.P. art. 880. He also argues that "the intent of the court to sentence the defendant at hard labor is seriously called into question when the court remanded the defendant to the `Sheriff's Office' and not to the Department of Corrections."
Although the trial court remanded the defendant to the custody of the Sheriff's Office, the court stated that the defendant's sentence was "at hard labor." Indeed, such sentence at hard labor is mandated by La. R.S. 14:66.[2] A sentence at hard labor necessarily requires commitment to the Department of Corrections. Therefore, the sentence as imposed, clearly shows the court's intent to sentence the defendant at hard labor notwithstanding the court's remanding the defendant to the "custody" of the "Sheriff's Office." Considering the requirement of the sheriff to deliver the defendant to state custody under La.R.S. 15:566 B, a remand on this point is not necessary.

ERROR PATENT DISCUSSION
We have reviewed the record for patent error in accordance with State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Orgeron, 620 So.2d 312 (La.App. 5 Cir.1993).
In so doing, we note that the transcript of the sentencing on July 6, 1994 reflects that the defendant was not informed of the prescriptive period in which he may file an application for post conviction relief. La. C.Cr.P. art. 930.8 dictates that, except under certain limited circumstances, a defendant must file his application for post-conviction relief within three years after his judgment *1090 of conviction; Section C of the article provides that:
At the time of sentencing the trial court shall inform the defendant of the prescriptive period for post conviction relief.
Although failure to inform the defendant does not constitute a ground for reversing the sentence it is necessary to remand the case and order the trial court to inform the defendant of the provisions of La.C.Cr.P. art. 930.8. La.C.Cr.P. art. 921.
In addition, the sentencing transcript, unlike the minute entry and commitment, shows that the trial court failed to give the defendant credit for time served, as mandated by La.C.Cr.P. art. 880. See also State v. Sherman, 532 So.2d 908 (La.App. 5 Cir.1988). Therefore, the sentence imposed is amended to conform to the commitment and give the defendant credit toward service of his sentence for time spent in actual custody prior to imposition of sentence.

DECREE
The conviction and sentence, as amended herein, are hereby affirmed and the case is remanded to the trial court for further action consistent with this opinion.
AFFIRMED AS AMENDED; REMANDED.
NOTES
[1] La.R.S. 32:57A provides the following penalty for a speeding violation: "a fine of not more than one hundred seventy-five dollars or ... imprisonment for not more than thirty days, or both ..."
[2] La.R.S. 14:66 states in pertinent part:

Whoever commits the crime of extortion shall be imprisoned at hard labor for not less than one nor more than fifteen years.