712 So.2d 701 (1998)
STATE of Louisiana
v.
Willie A. CARTER.
No. 98-KA-24.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 1998.
*702 Martin E. Regan, Jr., New Orleans, for Defendant/Appellant.
Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Appellate Counsel, Quentin P. Kelly, Trial Counsel, Gretna, for Plaintiff/Appellee.
Before GRISBAUM, GAUDIN and DALEY, JJ.
DALEY, Judge.
Defendant, Willie Carter, appeals his conviction for armed robbery, a violation of LSA-R.S. 14:64, and his sentence as a multiple offender. On appeal, he makes the following assignments of error:
1) The trial court erred in denying the appellant's Motion to Suppress the Identification arising from the physical lineup conducted on November 2, 1994;
2) The jury erred in finding the appellant guilty of armed robbery in violation of LSA-R.S. 14:64; and
3) The trial court erred in determining that appellant was a multiple offender.
We affirm the conviction. We vacate the sentence on the multiple offender bill, and remand for resentencing.
On November 22, 1994, the Jefferson Parish District Attorney filed a Bill of Information against the defendant, Mr. Willie A. Carter, charging him with one count of armed robbery, in violation of LSA-R.S. 14:64. At the arraignment, held on December 2, 1994, the defendant pled not guilty.
On December 2, 1994, the defendant filed various motions, including a Motion to Suppress any identifications. On March 6, 1996, the defendant filed various motions, including a second Motion to Suppress any identification.
On March 5, 1997, the trial court conducted a hearing on the motions to suppress, after which the trial court denied said motions. Thereafter, a jury trial commenced, which continued through March 10, 1997. At the conclusion of the jury trial, the twelve member jury found the defendant guilty as charged.
On March 21, 1997, the state filed a multiple offender Bill of Information, alleging that the defendant was a multiple felony offender, pursuant to LSA-R.S. 15:529.1.
On April 14, 1997, the trial judge sentenced the defendant to fifty-two years imprisonment at hard labor without benefit of *703 probation, parole or suspension of sentence. The defendant orally noticed his intention to appeal both the conviction and the sentence. Thereafter, the defendant denied the allegations contained in the multiple offender Bill of Information.
The defendant filed a Motion to Reconsider his sentence on July 17, 1997.[1] On the same day, the defendant filed a Motion for Appeal, which was granted by the trial court on September 10, 1997.
A hearing on the multiple offender Bill of Information was held on June 11, 1997. At the conclusion of the hearing, the trial judge requested memoranda from the defense attorney and the prosecutor regarding the admissibility of various documents under LSA-R.S. 15:529.1.
On September 16, 1997, over defense objection, the trial judge ruled that the evidence previously proffered by the state was accepted into evidence. Thereafter, he adjudicated the defendant a triple offender, vacated the defendant's original sentence, and imposed an enhanced sentence of life imprisonment.[2] The defendant orally moved for an appeal following the imposition of the enhanced sentence. A written Motion for Appeal was thereafter filed on September 31, 1997.

FACTS
At around 7:00 p.m. on October 23, 1994, the victim, Ms. Spicuzza, entered a Walgreen's store to make some purchases. While she was in the store, which was well-lit, she noticed a man who was wearing a black tank top and a thick gold chain and was walking in the store behind the cashier. Ms. Spicuzza was approximately five feet from the man when she first noticed him.
After Ms. Spicuzza finished making her purchases, she exited the store, whereupon the man wearing the black tank top and gold chain whom she had noticed earlier approached her from behind and tugged at her purse. He then pointed a gun at her and told her to give him her purse. Ms. Spicuzza gave the man her purse and he ran away. Before exiting the parking lot of the Walgreen's, he turned around and waived the gun at Ms. Spicuzza and the other people standing in the parking lot. Ms. Spicuzza ran back into the Walgreen's store, and an employee told her that the police had already been called.
The police recovered a surveillance tape from the Walgreen's store, which depicted an individual wearing a black tank top and black shorts enter the store. During the trial, when Ms. Spicuzza was shown the video tape (State Exhibit Number 2). She identified the individual wearing the black tank top and black shorts walking through the store as the defendant. She explained in court that she had looked directly at the defendant, and that the video tape reflected this fact.
The day after the armed robbery on October 24, 1994, Detective Kloiber responded to a suspicious person call at 1917 Faith Place in Terrytown. The officer found the defendant crouching behind a bush against the wall of one of the apartment buildings. For safety reasons, the officer ordered the defendant to stand up so that he could see his hands. He explained to the defendant that he was conducting an investigation into an armed robbery that had occurred the previous evening, whereupon the defendant denied any involvement in the crime, but admitted that he knew about the robbery. The defendant told the officer that Anthony Seamster and Larry Harris were responsible for the robbery that had occurred the previous evening. Thereafter, the defendant, *704 Seamster, and Harris were all transported to the police office for further questioning. According to Officer Kloiber, both Seamster and Harris provided statements. The two men were thereafter allowed to return home.
Ms. Spicuzza testified that the day after the robbery, the police showed her a photographic lineup consisting of seven photographs of seven different individuals. She explained that she selected two of the photographs, but that she was still not sure because she could not see the entire bodies of the people. One of the two photographs that she selected, photograph number seven, was the defendant's, and the other photograph that she selected, number six, was of another person. The group of photographs included one of Harris, photograph number five. The defendant identified Harris as one of the parties responsible for the robbery, but Ms. Spicuzza did not select Harris's photograph. She further testified she was positive that the people whose photographs she did not select were not responsible for the crime.
Larry Harris testified, explaining that he was currently serving a five year sentence for possession of cocaine with the intent to distribute. According to Harris, on October 23, 1994, the defendant owed him some money. Harris asked the defendant whether he had the money to pay him back, but the defendant replied that he did not. A few moments later, the defendant told Harris "man, I'm about to do something," and quickly lifted his shirt, showing Harris what appeared to be the handle of a black gun.
According to Harris, he left the defendant at that point and walked down the street with another friend. After walking a couple of blocks down the street, Harris told his friend that he was going to turn around and go back to see if the defendant was really going to do anything. Harris and his friend walked back to one of the defendant's friend's houses and waited for a while, but the defendant never showed up. Harris testified that Seamster was also at the same house.
The next day, October 24, 1994, Harris saw the defendant with a grey, flip-style cellular telephone. Specifically, Harris testified that he asked the defendant if he had the money that he owed him, and that the defendant told him that he did not have the money, but that he was going to pawn two telephones. One of the telephones was a grey, flip-style cellular telephone. Ms. Spicuzza testified that, among other items, on the night of the robbery, her purse contained a grey, flip style cellular telephone.
On November 2, 1994, Detective David Yenari conducted a physical lineup to determine whether the victim could identify the defendant as the perpetrator. He assembled six individuals possessing physical characteristics similar to those of the defendant's, and the victim identified the defendant as the perpetrator. Photographs of the physical lineup were introduced into evidence as State Exhibit Numbers 3 and 4. Detective Yenari produced a still photograph from the surveillance tape retrieved from Walgreen's. This photograph was introduced into evidence as State Exhibit Number 7. The officer explained that the reason he produced this still photograph was because the person in the photograph resembled the defendant.
Detective Yenari testified that in assembling people for the physical lineup, he selected five other persons who were of the same height as the defendant. He explained that he selected other persons for the lineup based on the defendant's appearance.
Ms. Spicuzza testified that she viewed a physical lineup approximately ten days after the crime. She testified that as the police led the six men in for her to view, the minute she saw the fifth person, she recognized him as the man who had robbed her. The fifth man in the physical lineup was the defendant. She testified in court that she had no doubt that the defendant was the person who had robbed her on October 23, 1994.

ASSIGNMENT OF ERROR # 1
In this assignment of error, the defendant argues that trial court erred in denying the Motions to Suppress, because he was denied his Sixth Amendment and La. Const. Article 1, § 13 right to counsel when the physical lineup was conducted on November 2, 1994 without counsel present on behalf of defendant. Specifically, the defendant argues *705 that the physical lineup was conducted at a critical stage of the proceedings, and therefore an attorney should have been present on his behalf during said lineup. The defendant argues that if an attorney had been present on his behalf, said attorney could have insisted that both people represented by the two photographs selected by the victim during the photographic lineup were included in the physical lineup.
The record shows that the robbery occurred on October 23, 1994. Defendant was arrested near the scene of the robbery on the next day, October 24, 1994. On the same day, police at the Second District at Oakwood Mall showed the victim a photographic lineup consisting of seven photographs. She picked two of them, one of which was the defendant, as possible suspects.
The record shows a bond order dated October 25, 1994. On October 26, 1994, Detective David Yenari of the Jefferson Parish Sheriff's Office filed a Motion to Compel physical lineup. The motion was signed on the same day, and Yenari personally delivered a copy to the Indigent Defender Board, which he stated is routine police practice so that an attorney from IDB can be present at the lineup if a defendant is unrepresented. On November 2, 1994, the physical lineup was conducted, but no one from IDB was present. The victim positively identified the defendant, stating several times in testimony that she was 100% sure that defendant was the one who robbed her.
In Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), a plurality opinion of the Supreme Court concluded that a person's Sixth Amendment right to counsel only attaches after the initiation of adversarial judicial proceedings against him.
The Supreme Court revisited the issue of the Sixth Amendment right to counsel in U.S. v. Gouveia, 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). In Gouveia, the Court adopted the reasoning of the plurality opinion in Kirby v. Illinois, supra, and noted pertinently:
... Our speedy trial cases hold that Sixth Amendment right may attach before an indictment and as early as the time of "arrest and holding to answer a criminal charge," ... but we have never held that the right to counsel attaches at the time of arrest. This difference is readily explainable, given the fact that the speedy trial right and the right to counsel protect different interests....
Gouveia, 467 U.S. at 189-190, 104 S.Ct. at 2298. See also McNeil v. Wisconsin, 501 U.S. 171, 175-176, 111 S.Ct. 2204, 2207-2208, 115 L.Ed.2d 158 (1991) ("The Sixth Amendment right, however, is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, `at or after the initiation of adversary judicial criminal proceedingswhether by way of formal charge, preliminary hearing, indictment, information, or arraignment' ..."); Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (Sixth Amendment right to counsel attaches only at initiation of adversary criminal proceedings and before such proceedings are initiated, a suspect in a criminal investigation has no constitutional right to the assistance of counsel).
The Louisiana Supreme Court visited the issue of when this right to counsel attaches in State v. Hattaway, 621 So.2d 796 (La.1993)[3]. In that decision, the Court determined that this right attaches no later that the first court appearance or judicial hearing, rather than at the time of indictment as previously understood. Earlier Louisiana cases had held that the right to counsel does not attach until the time of indictment, Kirby v. Illinois, supra, but Hattaway relied upon a wealth of later Supreme Court jurisprudence to extend this constitutional guarantee to the time of a defendant's first court appearance, although that Court found that the right existed only during pretrial confrontations that can be considered "critical stages" during adverse criminal proceedings.
Following Hattaway, in State v. Moore, 95-116 (La.App. 3 Cir. 10/4/95), 663 So.2d 250, the Third Circuit found that the "overwhelming weight" of jurisprudential authority holds that an accused is not entitled to be *706 represented by counsel at a pre-indictment lineup.
In Stewart v. State of Louisiana, 95-2385 (La.7/2/96), 676 So.2d 87, the Supreme Court found that a pre-indictment physical lineup was not a "critical stage" during adverse criminal proceedings. In Stewart, the defendant was identified as a suspect in a year-old unsolved murder. He was identified by an eyewitness in a photographic lineup. Stewart was subsequently arrested for first degree murder. On December 7, 1978, Stewart made his first judicial appearance pursuant to LSA-C.Cr.P. art. 230.1 as a suspect in that murder. Twelve days later, a six-person physical lineup was conducted at the police station. Stewart requested the presence of counsel, and the police asked the public defender's office to sent an attorney to the station, but one did not show up. The police proceeded with the lineup. The eyewitness again identified Stewart as the perpetrator, and he was subsequently indicted, tried, and convicted of second degree murder.
On application for post conviction relief, Stewart urged retroactive application of the Hattaway rule, because Stewart's lineup occurred after his initial court appearance but before his indictment. In declining to do so under the facts of that case, the Supreme Court, citing Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), found that the need for counsel at an identification lineup, before the State has obtained an indictment and set its course on prosecution, is not such a "bedrock component" of the fair adjudication of a criminal case.
In State v. Samuels, 94-1408 (La.App. 4 Cir. 6/7/95), 657 So.2d 562, the Fourth Circuit conducted a thorough analysis of Hattaway, stating:
The Louisiana Supreme Court has discussed at what point the right to counsel attached under the state and federal constitutions in State v. Hattaway, 621 So.2d 796 (La.1993). The Court stated that the Sixth Amendment right to counsel exists during pretrial confrontations that could be considered "critical stages".
After the right to counsel has attached and counsel has been retained or appointed to represent the defendant in the adverse judicial criminal proceedings, however, the defendant has the right to rely on counsel as the medium between himself and the state. Correlatively, the state has an affirmative duty not to circumvent or debate the protection afforded by the right counsel. Id. at 801.
* * * * * *
The court concluded that the right to counsel guaranteed by the Louisiana Constitution attached no later than the defendant's initial court appearance or first judicial appearance. The court adopted the "critical stages" test set forth in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), in which a functional analysis was used to analyze whether potential substantial prejudice interfered with the defendant's rights and the ability of counsel to help avoid that prejudice. The court noted that the right to counsel may attach even before initiation of adverse judicial criminal proceedings and cited State v. Thomas, 406 So.2d 1325 (La.1981).
In Thomas the defendants participated in a physical lineup prior to indictment. The defendants said that they advised the police that they objected to being in the lineup without the assistance of counsel; however, they did not testify that they requested the officers to notify their counsel or to confer with counsel. The court stated that under La.C.Cr.P. art. 230, a defendant has the right to procure and confer with counsel from the moment of arrest. The court held that a violation of this statutory right did not require the exclusion of evidence. The court stated:
Certainly, a timely request that the police notify (or permit an accused to notify) counsel of a forthcoming lineup ought always be honored. Nevertheless, in the absence of a bad faith effort to circumvent defendants' statutory right to counsel following arrest, and given the showing made in this case that the lineup was conducted according to fair and standard police procedure, the exclusion of reliable evidence is too great a price to *707 impose solely because of the absence of counsel at the lineup.
It is also logical to refuse to apply a per se rule of exclusion because the presence of counsel at the lineup is primarily intended to prevent unfairness, as noted in Wade, and not to prevent the accused from involuntarily supplying physical evidence against himself. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The Wade decision not only clearly recognized that the accused has no constitutional right to refuse to participate in a lineup, but also suggested that standard statutory or police administrative regulations assuring fairness could possibly remove the post-indictment lineup as a "critical stage" at which the Sixth Amendment right to counsel attaches. See State v. Pierre, 261 La. 42, 259 So.2d 6 (1972). Thus, the statutory right at issue here may be enforced simply by placing the burden on the state, when the statute has been violated, to prove the fairness of the procedure employed. This approach accommodates society's interest in fair and accurate factfinding in criminal trials and defendants' statutory right to "procure and confer with counsel" following arrest. La.C.Cr.P. Art. 230.

Thomas, 406 So.2d at 1328-1329 (footnote omitted). The court additionally concluded that even if the lineup identification was improper, the victim's in-court identification of a defendant emanated from the victim's independent recollection and was not the product of a tainted lineup; thus, its admission was harmless error.
Upon consideration of the above jurisprudence, we conclude that the trial court did not err in denying defendant's Motion to Suppress Identification. The trial court conducted a hearing on the motion, wherein the victim and police officers testified at length to the exact procedures used in the physical lineup.
The physical line-up was conducted on November 2, 1994, and Ms. Spicuzza identified the defendant at that time. While the defendant was under arrest at the time of the physical line-up, no formal charge, preliminary hearing, indictment, information, or arraignment had been held, filed, and/or returned. In fact, a Bill of Information was not filed against the defendant until November 22, 1994, and the defendant was not arraigned until December 2, 1994. Therefore, it appears that adversary judicial criminal proceedings had not commenced such that the right to an attorney embodied by the Sixth Amendment had attached.
Importantly, we note that nowhere in the record is testimony or evidence that the defendant asked for counsel at this stage. Moreover, we note that Detective Yenari personally delivered a copy of the Motion to Compel lineup to IDB so that an attorney could be present, but that no attorney attended the lineup. We also note that the record is not clear when Carter retained his trial and appeal counsel, but early in the proceedings he was represented by an appointed attorney. The record contains a request for appointment of counsel, made by the magistrate, dated November 28, 1994, several days before defendant's arraignment on December 2, 1994.
Like in State v. Samuels, we find that the police did not engage in a bad faith effort to circumvent defendant's right to counsel. There is also no evidence that counsel present would have changed the outcome of the lineup. We have reviewed the testimony from the witnesses regarding the lineup procedures and find the same to not be suggestive or tainted in any way. The testimony and evidence established that the lineup was conducted according to fair and standard police procedure.
Most importantly, the victim identified the defendant through independent recollection; she testified that immediately upon seeing defendant in the lineup, she was sure that he was the armed robber, but that she obeyed instructions to look carefully at each suspect before making an identification. Throughout her testimony at the suppression hearing and trial, the victim was unwavering in her assurance that she was 100% certain that defendant committed the armed robbery.
This assignment of error has no merit.

*708 ASSIGNMENT OF ERROR # 2
Defendant argues that the evidence was insufficient to support his conviction of armed robbery.
By this assignment of error, the defendant complains that the evidence was insufficient to support the conviction. Specifically, the defendant argues that the state failed to prove the element of identity. The defendant claims that the state failed to negate any reasonable probability of misidentification. He makes much of the fact the police report lists the robber's height as five feet ten inches, when defendant is only five feet five inches, and that Larry Harris, whom defendant identified as involved in the robbery, is five feet nine inches.
The appropriate standard of review for determining the sufficiency of the evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In Jackson, the Supreme Court explained that when assessing the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. See also State v. Rosiere, 488 So.2d 965 (La.1986).
The Louisiana Supreme Court has stated:
It is the role of the fact-finder to weigh the respective credibilities of witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond our sufficiency evaluations under the Jackson standard of review.
State ex rel Graffagnino v. King, 436 So.2d 559, 563 (La.1983). It is not the function of the appellate court to assess the credibility of witnesses or to weigh the evidence. Rosiere, 488 So.2d at 968; State v. Sampson, 95-58, p. 7 (La.App. 5 Cir. 5/30/95), 656 So.2d 1085, 1088, writ denied, 95-1665 (La.11/27/95), 663 So.2d 730.
LSA-R.S. 14:64 provides for the crime of armed robbery as follows:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
The elements of armed robbery are (1) a taking, (2) of anything of value, (3) from the person or in the immediate control of another, (4) by the use of force or intimidation, (5) while armed with a dangerous weapon. State in Interest of C.D., 95-160, pp. 3-4 (La.App. 5 Cir. 6/28/95), 658 So.2d 39, 40-41. However, defendant has only complained that the state did not prove that he was the perpetrator. This opinion will not address the sufficiency of the evidence with respect to the other elements listed above.
In State v. Spencer, 93-571 (La.App. 5 Cir. 1/25/94), 631 So.2d 1363, writ denied, 94-0488 (La.2/3/95), 649 So.2d 400, this Court addressed the precise issue of the whether the state offered sufficient evidence to prove that the defendant was the perpetrator of the crime. In Spencer, to prove the identity of the perpetrator, the state relied heavily on the testimony of one of its witnesses. As the defendant's brief accurately points out, this Court stated that "the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof." Id. at 1370.
Applying this legal principle to the case before it, this Court pointed to the fact that the jury had heard one of the state's witness identify the defendant as the perpetrator of the crime. Explaining that the jury had obviously chosen to believe the state's witness' testimony identifying the defendant as the perpetrator of this murder, this Court affirmed, noting that "[i]t is the jury's function to determine the weight of the evidence bearing on the defendant's identification.... It is not the reviewing court's function to re-evaluate the credibility choices and factual findings made by the jury."
In the present case, the jury heard the testimony of Ms. Spicuzza. She testified during direct examination and during cross-examination that she was positive that the defendant was the man who had robbed her on the night of October 23, 1994. She identified the defendant in court as the perpetrator. Her identification remained *709 very firm throughout the trial. Moreover, she testified that she did not tell the police the perpetrator was five feet ten; she said that the robber was taller than her height of five feet three inches. A photograph of Harris was in the photographic lineup; it was not one of the photos that Ms. Spicuzza selected.
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the defendant was the person who committed the armed robbery beyond a reasonable doubt.
This assignment of error has no merit.

ASSIGNMENT OF ERROR # 3
By this assignment, the defendant complains that the state failed to prove that his prior guilty pleas were informed, voluntary, and made following a waiver of the three rights enunciated in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
Specifically, defendant complains of the "dated" Boykin forms used ten years ago by the 24th Judicial District Court contain outdated and misleading language, in that they failed to inform defendant that they had the right to trial by judge if they waived their right to trial by jury. He also complains that the state did not demonstrate a proper chain of custody with regards to State Exhibit Number 4, which contains a fingerprint card.
During the multiple offender hearing, the defendant's attorney objected to the state's introduction into the record of State Exhibit Numbers 1, 1A, 1B, 1C, 2, 3 and 4, and assigned various grounds therefor.
The issues here are (1) whether the trial judge erred in allowing State Exhibit Number 3 to be admitted into evidence, and (2) whether the state proved that the defendant's prior guilty pleas were informed, voluntary, and made following a waiver of the three rights enunciated in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709 (1969).
In State v. Conrad, 94-232, pp. 3-4 (La. App. 5 Cir. 11/16/94), 646 So.2d 1062, 1064, writ denied, 94-3076 (La.4/7/95), 652 So.2d 1345, citing State v. Shelton, 621 So.2d 769 (La.1993)[4], this Court summarized the burdens of proof during a multiple offender proceeding as follows:
If the defendant denies the multiple offender allegations then the burden is on the State to prove (1) the existence of a prior guilty plea, and (2) that defendant was represented by counsel when the plea was taken. Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing (1) an infringement of his rights, or (2) a procedural irregularity in the taking of the plea. Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea. In doing so, the State must produce either a "perfect" transcript of the Boykin colloquy between the defendant and the judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an "imperfect" transcript. If anything less than a "perfect" transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant's prior guilty plea was informed and voluntary.
The multiple offender bill of information alleged that the defendant was a triple felony offender. The defendant denied the allegations contained in the multiple offender bill of information, and, therefore, the burden shifted to the state to prove (1) the existence of a prior guilty plea, and (2) that defendant was represented by counsel when the plea was taken.
Regarding the types of documents that the state may use as prima facie evidence of the defendant's prior convictions, LSA-R.S. 15:529.1(F) provides as follows:
The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any *710 penitentiary of this state or any other state of the United States, or of any foreign country, or of any chief officer of any parish or county jail in this state or any other state of the United States, or of the clerk of court of the place of conviction in the state of Louisiana, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate.
In the instant case, the state introduced various items into evidence during the hearing on the multiple offender Bill of Information, which included the following documents:

State Exhibit Number 1: certified copies from the Clerk of Court's office of the following documents: (1) a bill of information filed in Jefferson Parish charging "Willie A. Carter" with simple burglary of an inhabited dwelling, in violation of LSA-R.S. 14:62.2, (2) a form executed on January 11, 1988 in district court case number 87-3019 entitled "Defendant's Acknowledgment Of Constitutional Rights And Waiver Of Rights On Entry Of A Plea Of Guilty," which is signed by the defendant, his attorney and the trial judge, (3) a copy of the commitment dated January 11, 1988, and (4) a copy of the minute entry dated January 11, 1988, which reflects that the "[c]ourt advised the defendant of all of his rights including his right to a trial by jury, his right to confront his accusers and his right against self-incrimination, and the defendant acknowledged that he understood. The defendant waived these rights and a waiver of rights was executed and filed into the record...."

State Exhibit Number 1A: Jefferson Parish Sheriff's Office certified copy of the second page of an Arrest Register for "Willie A. Carter," dated July 27, 1987, reflecting that he was arrested for simple burglary of an inhabited dwelling. This document contains a set of fingerprints.

State Exhibit Number 1B: Jefferson Parish Sheriff's Office certified copy of the first page of an Arrest Register for "Willie A. Carter" in district court matter number G1719287, which reflects that he was arrested on July 27, 1987 for simple burglary of an inhabited dwelling. This document contains a set of fingerprints on its reverse side.

State Exhibit Number 1C: Jefferson Parish Sheriff's Office certified copy of a document entitled "Final Disposition Report." This document reflects that on January 11, 1988, in district court matter number G1719287, the defendant pled guilty to LSA-R.S. 14:27:62.2, attempted simple burglary of an inhabited dwelling. This document contains a set of fingerprints.

State Exhibit Number 2: certified copies of the following documents: (1) a bill of information filed in Jefferson Parish charging "Willie Carter" with simple burglary of an inhabited dwelling, in violation of LSA-R.S. 14:62.2, (2) a form executed on May 11, 1988 in district court case number 88-219 entitled "Defendant's Acknowledgment Of Constitutional Rights And Waiver Of Rights On Entry Of A Plea Of Guilty," which is signed by the defendant and his attorney, (3) a copy of the minute entry dated May 11, 1988, entitled "Sentence," which reflects that the "[c]ourt advised the defendant of all of his rights, including his right to a trial by jury, his right to confront his accusers and his right against self-incrimination and the defendant acknowledged that he understood. The defendant waived these rights and a waiver of rights was executed and filed into the record ...," and (4) a copy of the commitment dated May 11, 1988.

State Exhibit Number 3: certified copies from the Clerk of Court's office of the following documents: (1) a bill of information filed in Jefferson Parish charging "Willie A. Carter" with two counts of simple burglary of an inhabited dwelling, in violation of LSA-R.S. 14:62.2, (2) a form executed on May 11, 1988 in district court *711 case number 87-3451 entitled "Defendant's Acknowledgment Of Constitutional Rights And Waiver Of Rights On Entry Of A Plea Of Guilty," which is signed by the defendant, (3) a copy of the commitment dated May 11, 1988, and (4) a copy of the minute entry dated May 11, 1988, entitled "Sentence," which reflects that the "[c]ourt advised the defendant of all of his rights, including his right to a trial by jury, his right to confront his accusers and his right against self-incrimination and the defendant acknowledged that he understood. The defendant waived these rights and a waiver of rights was executed and filed into the record...."

State Exhibit Number 4: a certified affidavit from the Custodian of Records for the Department of Public Safety and Corrections stating that the accompanying documents are authentic copies of the following records from the Louisiana Department of Public Safety and Corrections: (1) a mug shot of "Willie Carter," which was taken on December 6, 1988, (2) a fingerprint card bearing the fingerprints of "Willie Carter," which was made on June 14, 1990 at the Department of Corrections, (3) a master prison record for "Willie Carter," (4) a letter of discharge from the Department of Corrections stating that "Willie Carter" had completed his sentences in district court case numbers 87-4351 and 88-219, and (5) the Federal Bureau of Investigation's record for "Willie A. Carter."[5]

State Exhibit Number 5: a fingerprint card made on June 11, 1997 during the hearing on the multiple offender bill of information that contains the defendant's fingerprints.
Officer Virgil McKenzie testified as an expert in the field of latent fingerprints. On June 11, 1997, the officer testified that the fingerprints contained in State Exhibit Number 5, which he took that day in court, matched the fingerprints contained in State Exhibit Numbers 1A, 1B, 1C, and 4. On September 16, 1997, Officer McKenzie testified that the fingerprints contained in State Exhibit Number 5, which he took in court on June 11, 1997, matched the fingerprints contained in State Exhibit Numbers 1A, 3, and 4. However, State Exhibit Number 3 does not contain any fingerprints, so it is unclear what Officer McKenzie was comparing with State Exhibit Number 5.[6]
Following the state's presentation of its evidence, the trial judge adjudicated the defendant a triple felony offender.
Turning to the defendant's complaint that the state failed to carry its burden of proof under Shelton, supra, with respect to the conviction in district court case number 87-3019, it appears that the minute entry, dated January 11, 1988, and the Waiver of Rights form indicate that the defendant pled guilty to a felony charge, attempted simple burglary of an inhabited dwelling, and indicate that the defendant was represented by counsel. Therefore, with respect to the defendant's conviction in district court case number 87-3019, the State carried its burden of establishing (1) the existence of a prior guilty plea, and (2) that defendant was represented by counsel when the plea was taken.
*712 With respect to the convictions in district court Case Numbers 88-219 and 87-3451, the minute entries, dated May 11, 1988, and the Waiver of Rights forms indicate that the defendant pled guilty to three counts of simple burglary of an inhabited dwelling (three felonies), and that the defendant was represented by counsel. Moreover, although the defendant also complains on appeal with respect to the chain of custody of State Exhibit Number 4, which included fingerprints that the state used to demonstrate the defendant was the individual convicted in district court case numbers 88-219 and 87-3451, State Exhibit Number 4 is a certified copy of records from the Department of Public Safety and Corrections. LSA-R.S. 15:529.1(F) provides that such documents are prima facie proof of the imprisonment and of the discharge of the person. Also, the district attorney stated that he received the documents from the Department of Public Safety and Corrections, and that said document had remained in his file ever since. As such, the trial court did not err in admitting said exhibit into evidence.
Therefore, with respect to the defendant's convictions in district court case numbers 88-219 and 87-3451, the state carried its burden of establishing (1) the existence of a prior guilty pleas, and (2) that defendant was represented by counsel when the pleas were taken.
The burden of proof then shifted to the defendant to produce affirmative evidence establishing (1) an infringement of the defendant's rights, or (2) a procedural irregularity in the taking of the plea. The defendant did not carry his burden. The defendant's attorney repeatedly objected to the admission of the state's exhibits. However, the defendant did not testify, nor did the defense offer any other affirmative evidence establishing (1) an infringement of the defendant's rights, or (2) a procedural irregularity in the taking of the plea(s). See State v. Winfrey, 97-427 (La. App. 5 Cir. 10/28/97), 703 So.2d 63; State v. Conrad, supra
This assignment of error is of no merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990); and State v. Godejohn, 425 So.2d 750 (La.1983).
The defendant committed the underlying offense, armed robbery of Ms. Spicuzza, on October 23, 1994. The trial judge determined that the defendant was a triple felony offender, stated that the defendant was a violent felony offender pursuant to LSA-R.S. 15:529.1(A)(2)(b)(ii), and, therefore, sentenced the defendant to life imprisonment.
However, at the time that the defendant committed the underlying offense, LSA-R.S. 15:529.1(A)(2)(b) provided as follows:
If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or
(ii) If the third felony and each of the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence. (Emphasis added).[7]
The previous convictions that the state used for purposes of the multiple offender bill of information were all for attempted simple burglary of an inhabited dwelling or simple burglary of an inhabited dwelling, in violation of LSA-R.S. 14:62.2 and LSA-R.S. *713 14:27:62.2. At the time the defendant committed the underlying offense, the maximum penalty for attempted simple burglary of an inhabited dwelling was six years imprisonment, and the maximum penalty for simple burglary of an inhabited dwelling was twelve years imprisonment. LSA-R.S. 14:62.2; LSA-R.S. 14:27:62.2.
Therefore, the trial court improperly imposed an enhanced sentence of life imprisonment upon the defendant. The appropriate sentencing provision, as set forth above, is LSA-R.S. 15:529.1(A)(2)(b)(i). The defendant committed armed robbery, in violation of LSA-R.S. 14:64, which, at the time of the commission of the underlying offense, carried a minimum penalty of five years imprisonment at hard labor, and a maximum penalty of ninety-nine years imprisonment at hard labor. LSA-R.S. 14:64.
Therefore, the minimum sentence that the trial judge could have imposed upon the defendant was sixty-six (66) years imprisonment at hard labor, and the maximum sentence that the trial judge could have imposed upon the defendant was one hundred and ninety-eight (198) years imprisonment at hard labor. See generally State v. Girod, 96-660 (La.App. 5 Cir. 11/25/97), 703 So.2d 771.
Considering the foregoing, we vacate the sentence on the multiple bill and remand for resentencing.
AFFIRMED IN PART; VACATED IN PART; AND REMANDED.
NOTES
[1] The motion to reconsider sentence was untimely because LSA-C.Cr.P. art. 881.1 provides that a motion to reconsider sentence is to be filed "[w]ithin thirty days following imposition of sentence or within such longer period as the trial court may set at sentence...." The motion to reconsider sentence was filed well beyond thirty days after the trial court imposed the sentence, and during the sentencing, the trial court did not state that the defendant had a longer period of time within which to file such a motion.
[2] It should be noted that the state told the district court that because the defendant's convictions in district court case numbers 88-219 and 87-3451 were entered on the same day, the state sought enhancement of the defendant's sentence pursuant to the guidelines for triple felony offenders, rather than pursuant to the guidelines for quadruple felony offenders.
[3] Overruled in part on other grounds by State v. Carter, 94-2859 (La.11/27/95), 664 So.2d 367.
[4] In Parke v. Raley, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), the United States Supreme Court considered a burden of proof scheme virtually identical to the one later adopted by the Shelton court, and held that "the Due Process Clause permits a State to impose a burden of production on a recidivism defendant who challenges the validity of a prior conviction under Boykin."
[5] Although the letter of discharge states district court case number "87-4351," it appears that the numbers were transposed incorrectly, as the correct district court case number is "87-3451."
[6] It should be noted that the evidence envelope contains one group of four stapled documents. The record reflects that these four stapled documents were never introduced into evidence. The evidence envelope reflects this fact as well.

The first two pages are copies of the arrest register for the simple burglaries of Ms. Patricia Melancon's home and Mr. Douglas Adams' home, in violation of LSA-R.S. 14:62.2. Notably, the victims' names correspond with the victims' names contained in State Exhibit Number 3. The third page is a set of fingerprints taken from "Willie Carter" at the time of his arrest for the two aforementioned crimes.
The last page is a copy of the arrest register for the simple burglary of Mr. Michael Ling's home, in violation of LSA-R.S. 14:62.2. Notably, the victim's name corresponds with the victim's name contained in State Exhibit Number 2.
It is quite possible that Officer McKenzie's testimony regarding the fingerprints contained in State Exhibit Number 3 actually refers to the third page of this group of stapled documents, as Officer McKenzie's initials and the date of the hearing, September 16, 1997, appear on the third page. However, as previously noted, this group of documents was not introduced into evidence during the hearing on the multiple offender bill of information.
[7] This provision was later amended by Acts 1995, No. 1245, § 1, which substituted "or either of the two prior felonies is a felony" for "and each of the two prior felonies are felonies" at the beginning of item A(1)(b)(ii). (Emphasis added).