930 So.2d 44 (2005)
STATE of Louisiana
v.
Richard J. ARCENEAUX.
No. 05-KA-338.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2005.
*46 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Desirée M. Valenti, Jackie Maloney, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
On January 9, 2004, defendant, Richard J. Arceneaux, along with Travis W. Cast, were charged by bill of information with simple burglary in violation of LSA-R.S. 14:62. Defendant pled not guilty to this charge on January 12, 2004. On April 26, 2004, the trial court denied defendant's Motion to Suppress Identification. On this same day, defendant's jury trial commenced and he was found guilty as charged.
On May 13, 2004, defendant filed a motion for new trial which was denied. Thereafter, defendant was sentenced to serve seven years imprisonment at hard labor. On this same day, the State filed a multiple offender bill of information, alleging defendant to be a second felony offender, and defendant denied these allegations.
Defendant filed a motion for appeal on May 27, 2004, which was granted on June 1, 2004. On July 8, 2004, defendant executed a waiver of rights and guilty plea form, admitting that he was a second felony offender. Defendant's original sentence was vacated and defendant was resentenced as a second felony offender to seven years imprisonment at hard labor without the benefit of probation or suspension of sentence.

FACTS
On December 18, 2003 at approximately 2:00 a.m., Richard Myers was at his residence at 2600 Houma Boulevard in Metairie preparing to go deer hunting. He woke up, went outside of his apartment complex to put his 30/30 rounds and his tree stand into his truck, a white 2000 Nissan Frontier, and then returned inside to change his clothes, gather his things and call his hunting friend. Upon leaving his house, he noticed someone hunched over in the driver's seat of his truck. He watched one person removing things from his truck and another person at the back of his truck throwing the things he was handed by the other into the bed of another truck. He saw someone who was wearing a black hat hunched over the driver's side window which had been broken and saw him take his external speaker for his CB radio out of his vehicle. After observing this, he called 911. Myers stated that at first he did not realize the truck being burglarized was his because his neighbor's truck was in the parking lot and was the same year, make, model and color. The suspects left the scene in a red Ford Ranger. Then, he went to the truck to take an inventory of what was taken to report this to the dispatcher.
*47 He realized he was missing a brown leather bomber jacket which belonged to his grandfather and was issued in World War II, a green Army jacket which was bought at an Army surplus store, a CB radio and its external speaker and a K-bar, a Marine Corps combat knife. He also gave the dispatcher a description of the suspects: two males that appeared Hispanic. He said the driver of the vehicle was wearing a black hat and dark clothing. While standing in the parking lot waiting for the police, the red truck returned. Realizing the original description he had given of a red F150 truck was wrong, he called 911 again to inform them it was in fact a red Ford Ranger. When the suspects saw the victim in the parking lot, they threw the truck into reverse and quickly sped off, turning off onto Houma Boulevard. He reported their direction to the dispatcher.
About three to four blocks away, Deputy Donald Dubroc stopped a red truck which matched the description of the suspects' vehicle. Deputy Dubroc identified defendant in court and stated that he was the passenger of the truck he stopped and Cast, who he saw sitting outside the courtroom in the hallway, was the driver of the vehicle and was wearing a hat. He stated that both were wearing dark clothing. He also testified that a bag of various tools which he realized from past experiences were tools which could be used in burglaries were also found in the vehicle.
Deputy David Darwin took Richard Myers' statement at the apartment complex and then brought him to where the suspects were stopped three blocks away. The victim identified the two individuals as being responsible for burglarizing his truck and identified the vehicle as the truck that fled with his property. While at the scene, he realized more things had been taken out of his truck than he initially thought. He identified his things at the scene, and they were returned to him. Through photographs, he identified his things in court as well: 30/30 shells, a deer rifle, a lantern, a bomber jacket, an Army jacket, a CB radio, an external speaker, a K-bar, a CD case, a hatchet, a boot knife, a diamond knife sharpener and a deer drag.
Further, Richard Myers identified defendant in court. He testified that defendant was standing at the rear of his truck and taking things from the person who was in his truck and placing it into the bed of the red truck they were in.
Cast gave voluntary statements on December 18, 2003. Later, Cast testified at trial on defendant's behalf and stated that he had borrowed his roommate Steve West's truck, a red Ford Ranger, to go see his girlfriend and asked defendant to take a ride with him. He and defendant went to an apartment complex in Metairie to look for his girlfriend who was not there. As they were leaving the parking lot, he noticed a truck with its driver's side window busted and saw a CB antenna on the back of the truck. He admitted that he went into the truck and took the CB radio and a jacket. He testified that he parked the truck and walked over to the truck to take those things without saying anything to defendant. He claimed that defendant was asking him what he was doing and telling him to get back in the truck and that he was stupid. According to Cast, defendant remained in the truck the whole time. They left and were stopped by the police a couple of blocks away. Cast stated that he did give a voluntary statement which acknowledged that he did the crime, however, the statement reflects that he broke the window when actually he did not. Cast pled guilty to the burglary of the vehicle and stated that defendant did not participate in the burglary, did not act as a look out and did *48 not take things out of the vehicle. Cast testified that he took the CB and the leather jacket out of the truck and did not know how the other things got there.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that the evidence presented by the State at trial was legally insufficient to support his conviction. Specifically he submits that no rational trier of fact could have found that the State bore its burden of proving possession beyond a reasonable doubt; therefore, the trial court erred in denying defendant's motion for new trial. Defendant asserts that co-defendant Cast assumed full responsibility for the burglary and consistently has stated that defendant was not involved in the burglary. Finally, defendant questions the credibility of the victim's recollections because at first he did not realize his own truck was being burglarized and due to his vague descriptions he gave of the suspects.
The State responds that the trial court properly denied defendant's new trial motion because it presented sufficient evidence to support defendant's conviction of simple burglary. At the very least, the State argues that the evidence presented reflected that defendant was concerned in the commission of the burglary and was guilty as a principal to the offense. In addition, the State provides that the crime of simple burglary does not require proof of possession of stolen goods.
Defendant filed a motion for new trial alleging that the jury's verdict was not substantiated by the evidence presented at trial. The trial court denied this motion.
In reviewing the sufficiency of evidence, an appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citation omitted); State v. Tilley, 99-0569 (La.7/6/00), 767 So.2d 6, 24, cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001) (citations omitted).
Under LSA-R.S. 15:438, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." However, this requirement does not establish a standard separate from the Jackson standard, but provides a helpful methodology for determining the existence of reasonable doubt. State v. Smith, 02-1018 (La.App. 5 Cir. 3/11/03), 844 So.2d 119, 125. In assessing other possible hypotheses in circumstantial evidence cases, the appellate court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994) (citations omitted). Instead, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under the Jackson standard. Id.
In the present case, defendant was convicted of simple burglary which is defined by LSA-R.S. 14:62(A) as "the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60." Whenever any part of defendant's *49 person passes the line of the threshold, entry is accomplished. It is sufficient that any part of the person intrudes into the structure, even momentarily. State v. Smith, 844 So.2d at 125 (citing State v. Petty, 99-1307 (La.App. 5 Cir. 4/12/00), 759 So.2d 946, writ denied, 00-1718 (La.3/16/01), 787 So.2d 301). Specific intent is required by LSA-R.S. 14:62 and may be inferred from the circumstances and actions of the accused. Id. Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Whether a defendant possessed the requisite intent in a criminal case is for the trier of fact, and a review of the correctness of this determination is guided by the Jackson standard. State v. Tran, 97-640 (La. App. 5 Cir. 3/11/98), 709 So.2d 311, 317 (citation omitted).
Because the State did not present evidence that defendant entered the victim's vehicle, it had the burden of proving that defendant was a principal to the simple burglary offense. For a defendant to be found guilty as a principal to such a burglary, the defendant does not have to personally enter the burglarized structure. State v. Jetton, 32,893 (La.App. 2 Cir. 4/5/00), 756 So.2d 1206, 1212, writ denied, 00-1568 (La.3/16/01), 787 So.2d 299 (citing State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998)). Instead, the State has the burden of proving that defendant was concerned in the commission of the crime, aided or abetted in its commission, or directly or indirectly counseled another to commit the crime as a principal. State v. Jetton, supra at 1212 (citing LSA-R.S. 14:24). Stated differently, the jury had to find beyond a reasonable doubt that someone made an unauthorized entry into the victim's truck with the intent to commit a theft, and that defendant was someone concerned in the commission of the crime. State v. Bullard, 29,662 (La.App. 2 Cir. 9/24/97), 700 So.2d 1051, 1054 (citations omitted).
"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." LSA-R.S. 14:24. Only those persons who "knowingly participate in the planning or execution of a crime" are principals to that crime. State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427, 428 (per curiam) (citation omitted). "[A]n individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state." State v. Pierre, supra (quoting State v. Holmes, 388 So.2d 722, 726 (La. 1980)). Mere presence at the scene of a crime does not make one a principal to the crime. State v. Pierre, supra at 428 (citation omitted). However, "`[i]t is sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice's intention.'" State v. Anderson, 97-1301 (La.2/6/98), 707 So.2d 1223, 1225 (per curiam) (quoting 2 W. LaFave, A. Scott, Substantive Criminal Law, § 6.7, p. 138 (West 1996)).
According to Richard Myers, he was about one-hundred feet away from his truck when he watched the burglary. He testified that the parking lot of his apartment complex was well lit and that he did not wear glasses. Further, he identified defendant in court. Although he admitted that he originally said the suspects appeared Hispanic, he explained that the *50 parking lot light gives everything an orange colored glow. He testified that when he identified the suspects he was positive they were the same people that burglarized his truck and he was positive that all the property he identified was his. As the victim testified, his things were taken from his vehicle and put into a red Ford truck which was pulled over three blocks away with his things in the bed of the truck. The victim testified he was one-hundred percent positive that he saw defendant outside of the red truck and to the rear of his truck, putting things into the red truck, and then saw him get back into the red truck which drove away. Further, he also testified that there was not any property taken out of his truck that he did not get back from their truck.
Richard Myers did not see anyone break his truck's window and did not see if defendant actually took things from his truck. However, he testified that defendant was standing at the rear of his truck and taking things from the person who was in his truck and placing it into the bed of the red truck they were in. He testified that he did not give defendant nor Cast permission to take things out of his truck.
It is not the function of the appellate court to second-guess the credibility determinations of the trier of fact or to reweigh the evidence. State v. Carter, 98-24 (La. App. 5 Cir. 5/27/98), 712 So.2d 701, 708, writ denied, 98-1767 (La.11/6/98), 727 So.2d 444 (citations omitted). "The trier of fact shall evaluate the witnesses' credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness." State v. Crawford, 03-1494 (La.App. 5 Cir. 4/27/04), 873 So.2d 768, 786, writ denied, 04-1744 (La.5/6/05), 901 So.2d 1083 (citation omitted).
Although defendant argues that the evidence was insufficient to support his conviction, the jury heard the evidence and apparently chose to accept the testimony of the victim and reject the testimony of the co-defendant. After viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have found, beyond a reasonable doubt, that the evidence was sufficient to support defendant's conviction. Therefore, we affirm defendant's conviction of simple burglary.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920: State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) and at the request of the defendant. The following matters are presented for review.
When imposing defendant's original sentence, the trial court ordered that defendant's sentence be served concurrent with his probation revocation. Although there is no prohibition against a trial court imposing a sentence to run concurrent with a parole revocation, LSA-C.Cr.P. art. 901(C)(2) states that only the judge who revokes the probation can order the sentence on a probation revocation to run either concurrent or consecutively with the sentence on the later conviction. State v. Bruce, 03-918 (La.App. 5 Cir. 12/30/03), 864 So.2d 854, 859 (citing State v. Perrilloux, 99-1314 (La.App. 5 Cir. 5/17/00), 762 So.2d 198, 205-206). However, we find that no action is required since this sentence was vacated when defendant was sentenced as a second felony offender.
Second, the trial court failed to properly inform defendant of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8. Although defendant was advised of the prescriptive period after his original sentencing *51 which was vacated, he was not properly re-advised when sentenced as a multiple offender. The written waiver of rights guilty plea form regarding the multiple bill advised defendant that he had "two (2) years to file post conviction relief." The minute entry, however, does not reflect any other advisal regarding the prescriptive period for post-conviction relief. Because the advisal was incomplete, we remand the case and order the district court to properly inform defendant of the time from which prescription for post-conviction relief runs by sending written notice of such to defendant within ten days of the rendition of the appellate opinion and to file written proof that defendant received the notice in the record. See, State v. Knight, 01-881 (La.App. 5 Cir. 2/13/02), 811 So.2d 947, 951 (citation omitted).
Accordingly, defendant's conviction of simple burglary is affirmed and the matter is remanded with instructions to correct an error patent.
AFFIRMED; REMANDED WITH INSTRUCTIONS.