MARC E. JOHNSON, Judge.
 

 | ^Defendant, Nathan Pettus, appeals the sufficiency of evidence and the granting of the State’s 404(B) Motion relating to his conviction for theft of goods valued over $300.00 but less than $500.00, in violation of LSA-R.S. 14:67.10, in the 24th Judicial District Court, Division “L”. This is a companion case to
 
 State v. Pettus,
 
 10-777 (La.App. 5 Cir. 5/24/11); 68 So.3d 28. For the following reasons, we affirm the conviction.
 

 STATEMENT OF THE CASE
 

 On February 5, 2009, the Jefferson Parish District Attorney filed a bill of information charging Defendant with theft of goods valued at over $300.00, a violation of LSA-R.S. 14:67.10. He pleaded not guilty at the arraignment. On June 23, 2009, a trial in this matter was held. At the conclusion of the trial, Defendant was found guilty as charged by a jury. On August 17, 2009, Defendant filed a motion for new trial, which was denied by the trial court that same day. |sAfter Defendant waived delays, the trial court sentenced him to a term of imprisonment of two years at hard labor, with credit for time served.
 

 On August 17, 2009, the State filed a habitual offender bill of information alleging Defendant to be a fourth felony offender. The trial court later found Defendant to be a fourth felony offender, vacated the sentence on the theft of goods charge, and re-sentenced Defendant to a term of imprisonment of life.
 

 FACTS
 

 Deputy Kevin Gorman of the Jefferson Parish Sheriffs Office testified that, on January 15, 2009, he had the occasion to
 
 *23
 
 come into contact with Defendant at the Dillard’s Department Store in the Lakeside Mall in Metairie, Louisiana, while working a security detail. Deputy Gorman stated his responsibilities included responding to theft and shoplifting complaints and apprehending shoplifters. He testified that he was in his police uniform that day. While patrolling the floor of the Dillard’s on January 15, 2009, Mr. Pedro Barrios, a full-time loss prevention officer at Dillard’s, indicated to Deputy Gorman via two-way radio that a male subject had picked up some belts, concealed the belts beneath his jacket, and was proceeding immediately to the store exit. At that point, Mr. Barrios did not identify the subject in question as Defendant. Deputy Gorman testified that he moved to stand between the store exit doors after receiving the notice from Mr. Barrios. Deputy Gorman indicated that, when the subject in question (later identified as Defendant) was exiting the store, the subject observed him and ran back into the store. At that point, Deputy Gorman assumed Defendant was going to run through the store to the next exit.
 

 Accordingly, Deputy Gorman ran along the outside of the building thinking he would catch Defendant at the next exit. However, Mr. Barrios then alerted Detective Gorman that Defendant was actually running toward the interior of the |4mall. Detective Gorman entered the interior of the mall and located the defendant near the Cafe du Monde. As Deputy Gorman approached the defendant and put his hands on the defendant, the defendant pushed him and ran off towards the area known as “Center Court.” Deputy Gor-man gave chase and eventually tasered Defendant after he ignored repeated commands to stop running.
 

 Deputy Gorman testified that the events which occurred in Dillard’s on January 15, 2009 were captured on camera, but there was no video footage of the events which occurred in the mall area after the defendant ran out of Dillard’s. Deputy Gorman indicated that, according to the police report made that day, the belts Defendant were observed concealing under his jacket were recovered, and that their combined value was $307. Deputy Gorman recalled that he checked the price tags of the belts to confirm the prices.
 

 On cross-examination, Deputy Gorman indicated that on January 15, 2009, he did not know that Defendant was the person who concealed the belts in his jacket until he apprehended him. Deputy Gorman also admitted that he did not see a belt on Defendant’s person prior to tasering him. Deputy Gorman was not sure whether anybody other than he or Mr. Barrios had handled the belts in question.
 

 In recalling a previous incident while working the security detail on October 28, 2008, Deputy Gorman testified that he had the occasion to arrest Defendant and Vanessa Tabora. Deputy Gorman indicated that he was wearing a police uniform while on the detail. Deputy Gorman explained that on that date, he was in the loss prevention office with Mr. Barrios. Deputy Gorman testified that he and Mr. Barrios were looking at store security monitors when they observed Ms. Tabora carrying some Ed Hardy and Affliction brand t-shirts she had taken from store shelves. Deputy Gorman observed Ms. Tabora meet with Defendant and give him the shirts. After looking over the shirts, Defendant grabbed Ms. Tabora’s purse, | fiopened it, and placed the shirts inside. At that point, Ms. Tabora walked toward an exit, where she was detained and held by the security office. Deputy Gorman and another mall security officer subsequently located Defendant in the men’s denim department of the same store and
 
 *24
 
 placed him under arrest. Defendant made no attempt to flee.
 

 Deputy Gorman testified that after being arrested, Defendant was verbally and physically abusive towards him. Ms. Ta-bora was, however, cooperative with security personnel. According to the police report Detective Gorman created that day, the value of the three shirts misappropriated by Ms. Tabora was determined to be $232.00. Deputy Gorman indicated that the events of October 28, 2008 were captured by store surveillance cameras and transferred to a compact disc.
 

 Mr. Barrios testified that he is a loss prevention officer at the Lakeside Mall Dillards. Mr. Barrios, additionally, testified that his duties as a loss prevention officer include monitoring surveillance cameras in Dillard’s for people stealing, people changing prices, employees coming in late, and certain other employee activities.
 

 Mr. Barrios also testified that he participated in an investigation that led to the arrest of Defendant on January 15, 2009. On that date, Mr. Barrios was working in the loss prevention office. His attention was drawn to Defendant, because Defendant was wearing a jacket with only one arm in a sleeve. Mr. Barrios confirmed that he radioed Deputy Gorman and told him that he was watching a white male in Men’s Denim. Mr. Barrios then observed the defendant pick up several belts, conceal the belts in his jacket, and head for the store’s exit.
 

 Mr. Barrios additionally confirmed through his testimony that he radioed Deputy Gorman and informed Deputy Gor-man that Defendant was heading toward an exit that was approximately five feet from the belt display rack. Mr. Barrios |fitestified that when Defendant reached the door, he observed Deputy Gorman next to the door, appeared to wave at the Deputy, ran back towards the store, and went out into the mall. Mr. Barrios testified that he did not confront Defendant initially, but after Deputy Gorman had ta-sered Defendant, Mr. Barrios was able to recover three Ed Hardy belts from where Defendant had run to exit the store. When questioned about the prices of the belts, Mr. Barrios testified that two of the belts were priced at $99.00; however, he stated three different prices for the third belt. Eventually, Mr. Barrios concluded that two of the Ed Hardy belts were priced at $99.00, and the third was priced at $109.00. On cross-examination, Mr. Barrios admitted that he did not create a report of this incident. He further admitted that on the surveillance tape, he could not see how many belts the defendant had taken.
 

 In recalling the incident on October 28, 2008, Mr. Barrios testified that he participated in an investigation that led to the arrest of Defendant. The items being shoplifted on that date were Ed Hardy and Affliction brand shirts, and those items were displayed in the Men’s Denim section of Dillard’s located on the first floor.
 

 ASSIGNMENTS OF ERROR
 

 On appeal, Defendant alleges the trial court erred in granting the State’s 404(B) Motion, and the State failed to present sufficient evidence to uphold the conviction of theft of goods valued over $300.00 but less than $500.00.
 

 LAW AND ANALYSIS
 

 When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, a reviewing court must first determine the sufficiency of the evidence.
 
 State v. Hearold,
 
 603 So.2d 731, 734 (La.1992). Accordingly,
 
 *25
 
 this Court will discuss Defendant’s second assignment of error first.
 

 | t
 
 Assignment of Error
 
 #
 
 2
 

 In his second assignment of error, Defendant contends that the State did not produce sufficient evidence to support his conviction for theft of goods. Defendant makes two separate arguments in support of his contention that the evidence used to convict him was insufficient: (1) that he did not exit the store with the merchandise, and thus was at most only guilty of an attempted theft of goods, and (2) that the loss prevention officer who retrieved the merchandise inside the store testified to three different amounts as to the aggregate value of the belts.
 

 The constitutional standard for testing the sufficiency of evidence requires that the evidence, direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, be sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt, in accordance with
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
 

 Under LSA-R.S. 15:438, “[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” This requirement does not establish a standard separate from the
 
 Jackson
 
 standard, but provides a helpful methodology for determining the existence of reasonable doubt.
 
 State v. Arceneaux,
 
 05-338, p. 6 (La.App. 5 Cir. 12/27/05); 930 So.2d 44, 48. In assessing other possible hypotheses in circumstantial evidence cases, the appellate court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events.
 
 Id., citing State v. Davis,
 
 92-1623 (La.5/23/94); 637 So.2d 1012, 1020,
 
 cert. denied,
 
 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). Instead, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the |8possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under the
 
 Jackson
 
 standard.
 
 Id.
 
 at p. 7, 930 So.2d 44.
 

 Abandonment of the Items
 

 Defendant contends that while he did initially, partially conceal the belts under his jacket, he did not attempt to take them with him when he exited into the mall, and instead, left them in Dillard’s. Defendant further contends the most he was guilty of was an attempted theft of goods because the State failed to prove the required element that he took something from the store.
 

 The State avers there is no merit to Defendant’s claim that he was not guilty of theft because he abandoned the merchandise in Dillard’s as he fled into the mall after his theft was detected. The State contends that the theft was completed when Defendant took the belts and concealed them under his jacket, which established his misappropriation of the items and intent to deprive the merchant of them permanently. We agree with the State’s position.
 

 LSA-R.S. 14:67.10 provides, in pertinent part, that
 

 A. Theft of goods is the misappropriation or taking of anything of value which is held for sale by a merchant, either without the consent of the merchant to the misappropriation or taking, or by means of fraudulent conduct, practices, or representation. An intent to deprive
 
 *26
 
 the merchant permanently of whatever may be the subject of the misappropriation or taking is essential and may be inferred when a person:
 

 (1) Intentionally conceals, on his person or otherwise, goods held for sale.
 

 Specific criminal intent is defined as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” LSA-R.S. 14:10(1). Specific intent is a state of mind, and as such, need not be proven as a fact, but may be inferred from the circumstances and actions of the accused.
 
 State v. Davenport,
 
 08-463, p. 7 (La.App. 5 Cir. 11/25/08); 2 So.3d 445, 449;
 
 State v. Green,
 
 02-883, p. 5 (La.App. 5 Cir. 1/28/03); 839 So.2d 286, 287. The question of whether the requisite intent is present in a criminal case is one for the trier of fact, and a review of the correctness of that determination is guided by the
 
 Jackson
 
 standard.
 
 State v. Tran,
 
 97-640, p. 11 (La.App. 5 Cir. 3/11/98); 709 So.2d 311, 317.
 

 In this matter, the jury convicted Defendant of theft of goods over $300.00 but less than $500.00. In the jury instructions given to the members of the jury, they were instructed that Defendant was presumed to be innocent until each element of the crime necessary to constitute his guilt was proven beyond a reasonable doubt. As the triers of fact, the jury concluded Defendant was guilty and convicted him of the crime charged. The conviction infers the jury found Defendant did have the specific intent to permanently deprive Dillard’s of its belts, despite the fact that he abandoned them in the store.
 

 From the surveillance video and the testimony presented, it was confirmed that Defendant took the belts, concealed the belts under his jacket, and proceeded immediately toward the store’s exit. After Defendant observed Deputy Gorman move to stand between the exit doors, Deputy Gorman noticed Defendant run back into the store. Although Defendant ultimately discarded the belts before he exited the store, it was not necessary that he physically possessed the goods he stole on his person at the time of arrest. From the circumstances and Defendant’s actions, it could be inferred that he intended to permanently deprive Dillard’s of its merchandise before he realized that he had been detected by Deputy Gorman.
 

 After reviewing the totality of the evidence, both direct and circumstantial, we conclude the evidence was sufficient for the jury to find Defendant had the intent to permanently deprive Dillard’s of its merchandise.
 

 |
 
 wValue of Goods
 

 Defendant argues there is a question as to when the price tags were put on the belts, before or after the incident, and that creates reasonable doubt as to the value element of LSA-R.S. 14:67.10 being met. Defendant avers Mr. Barrios testified to three different combined amounts of the belts as the State prodded him to ensure the aggregate value met the $300.00 felony threshold. Defendant further avers Mr. Barrios, the individual who retrieved the belts, should have been able to give the correct prices the first time, without changing his testimony twice to give the desired answer of the State.
 

 The State contends there is absolutely no basis in the record for suggesting that the tags on the belts were retroactively altered in any respect to increase the value of the merchandise taken. The State further contends that while Mr. Barrios had trouble recalling the exact price of the third belt until he reviewed a photograph of all of the belts and the price tags, at no time did he testify that the total value of the belts was less than $300.00. We again agree with the State’s position.
 

 
 *27
 
 There is no evidence or testimony of price tag tampering in the record. As to the value of the items, Mr. Barrios’ somewhat confused testimony does not create reasonable doubt that the value of the belts combined was less than $800.00. The picture taken that day clearly indicates that the sale price of two of the belts was $99.00 each, and that the sale price of the third belt was $109.00, which equals at total of $307.00. Even if Mr. Barrios was correct in his original assertion that the value of the third belt was $103.00, the combined value of the belts would have been $301.00. The evidence submitted by the State was sufficient to prove an element of the offense charged, namely, that the value of the three belts was between $300.00 and $500.00. Ultimately, we conclude the evidence was Insufficient to prove the aggregate total of the belts taken by Defendant amounted over $300.00.
 

 Given the foregoing reasons, this assignment of error has no merit.
 

 Assignment of Error
 
 #
 
 1
 

 In his first assignment of error, Defendant argues the trial court erred in allowing the State to present evidence that the same two officers arrested him two months prior to this incident for being a principal to shoplifting in the same store and department. Defendant states the State argued that the prior theft was relevant to show his motive or intent to steal merchandise from the Men’s Denim department at Dillard’s. However, Defendant argues the State failed to adequately prove his intent to steal in the first incident, and the trial court failed to weigh the probative value of the admission of the alleged prior crime against its prejudicial effect.
 

 The State contends Defendant’s intent to permanently deprive Dillard’s of the belts was at issue and could be inferred by his intentional concealment on his person of goods held for sale. The State avers the prior incident involving the concealment of the shirts inside of Vanessa Tabo-ra’s purse is relevant to his intentional concealment of the belts, his intent to permanently deprive the department store of the merchandise, and the lack of mistake or accident. In the alternative, the State argues that if this Court finds error in admitting the evidence, such error would be harmless in light of the overwhelming evidence of Defendant’s guilt.
 

 LSA-C.E. art. 404(B) provides the basic rule regarding the use of evidence of “other crimes, wrongs or acts” at trial. LSA-C.E. art. 404(B) states, in pertinent part,
 

 |12(1) Except as provided in Article 412 [regarding a victim’s past sexual behavior in sexual assault cases], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.
 

 In
 
 State v. Code,
 
 627 So.2d 1373, 1381 (La.1993),
 
 cert. denied,
 
 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490,
 
 rehearing denied,
 
 512 U.S. 1248, 114 S.Ct. 2775, 129 L.Ed.2d 887 (1994), the Louisiana Supreme Court set forth the following factors which must be met for other crimes evidence to be admissible under the system or modus operandi exception:
 

 (1) there must be clear and convincing evidence of the commission of the other crimes and the defendant’s connection therewith; (2) the modus operandi employed by the defendant in both the charged and the uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant commit
 
 *28
 
 ted the crime on trial because he is man of criminal character; (4) the other crimes evidence must tend to prove a material fact genuinely at issue; and (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect.
 

 The State is required to prove that defendant committed the other crimes by a preponderance of the evidence.
 
 State v. Guidroz,
 
 98-377, pp. 11-12 (La.App. 5 Cir. 10/14/98); 721 So.2d 480, 486,
 
 writ denied,
 
 98-2874 (La.2/26/99); 738 So.2d 1061.
 

 In the instant matter, Defendant attempted to steal from the same Dillard’s store on both October 28, 2008 and January 15, 2009. He entered the same store and department on those dates empty handed and attempted to conceal Ed Hardy brand merchandise on his person or in Vanessa Tabora’s purse. We find that the State proved by a preponderance of the evidence that Defendant committed a theft on October 28, 2008, and the probative value of the testimony regarding the October 28, 2008 incident outweighs any prejudicial effect to Defendant because | 13of the similarities between the crimes. Accordingly, we find that this assignment of error has no merit.
 

 ERROR PATENT DISCUSSION
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5th Cir.1990). The review reveals no errors patent in this case.
 

 DECREE
 

 Based upon the foregoing reasons, Defendant’s conviction is affirmed.
 

 AFFIRMED