JOY COSSICH LOBRANO, Judge.
h The defendant, Kevin L. McCord, Sr., was charged by bill of information with attempted burglary of an inhabited dwelling, in violation of La. R.S. 14:62.2 and 14:27. Also charged in the bill of information was Michael D. Jackson, who subsequently pled guilty to the charge against him. Mr. McCord was found guilty by a jury of the lesser charge of attempted unauthorized entry of an inhabited dwelling, in violation of La. R.S. 14:62.8 and 14:27, and was originally sentenced to two years and six months at hard labor with credit for time served. The State then charged Mr. McCord as a multiple offender, and he pled guilty to that charge. The trial court vacated the original sentence, and resentenced Mr. McCord to three years and six months at hard labor with credit for time served. Mr. McCord now appeals.
On January 13, 2009, Detective Francis Jarrott of the New Orleans Police Department participated in a burglary investigation at a home located at 5419 South Ro-cheblave Street. Detective Jarrott met with the owner of the house, Andrew La-peyre, who showed him a rear door that looked as though someone had tried to pry it open with a crowbar or a flat-head screwdriver. Mr. Lapeyre told Detective Jarrott that he was unable to determine whether or not any items had | ?been taken from the house. Photographs taken at the crime scene by the NOPD crime lab were introduced into evidence. Included in these photographs were ones showing damage to the rear door of the house. Detective Jarrott testified that he learned that Mr. McCord and Mr. Jackson had been arrested for the attempted burglary, and that neither man had been given permission by the home’s owner to enter the home.
The next witness was Andrew Lapeyre, the owner of the home located at 5419 South Rocheblave Street. On January 13, 2009, Mr. Lapeyre went to his home in the middle of the day after learning that NOPD officers were in the neighborhood conducting a burglary investigation. No one in his family was at home at that time. Only the family dog was inside the home in the middle of the day. When Mr. Lapeyre arrived home, he noticed that one of the exterior doors was damaged and looked as though someone had tried to pry it open. Mr. Lapeyre testified that he did not know Mr. McCord or Mr. Jackson, and had not given either man permission to enter his home. When he left his home on the morning of January 13, 2009, there was no damage to the door that had been pried open when he returned home in the middle of the day. Mr. Lapeyre stated that there were no items taken from his home.
Detective Daniel Carter testified that he was doing surveillance in an unmarked vehicle on January 13, 2009, looking for suspicious persons in an area that had been plagued by burglaries. Another unit participating in the surveillance of this neighborhood alerted other officers by ra *212 dio of a blue Suzuki vehicle circling blocks in the area, and slowing down in front of several residences. The radioed call noted that one of the men in the Suzuki exited the vehicle at several locations. Detective Carter and officers in a couple of other unmarked vehicles |skept the blue Suzuki under surveillance for over an hour. He noted that there were two men in the vehicle. When the vehicle arrived in the 5400 block of South Rocheblave Street, the passenger exited the vehicle and walked down an alleyway to an area behind the house at 5419 South Rocheblave Street, nervously glancing over his shoulder while he did so. At that time, the driver of the blue Suzuki drove off and turned onto Octavia Street to a location that Detective Carter could not see. Detective Carter saw the man who went into the alleyway reemerge several minutes later, carrying the sweatshirt he had been wearing when he walked into the alleyway. The sweatshirt appeared to be bundled around something. The man carrying the sweatshirt walked onto Octavia Street, where the blue Suzuki was now parked. He entered the vehicle on the passenger side, and the two men drove off.
Believing the passenger of the blue Suzuki had just trespassed on the property or committed a burglary, Detective Carter followed the vehicle and called for marked units to perform a traffic stop on the vehicle. The vehicle was stopped several blocks away, and when Detective Carter arrived at the scene, the two subjects had been placed under arrest. He identified Mr. McCord as the driver of the vehicle, and Mr. Jackson as the passenger. He said Mr. Jackson was not carrying anything in his hands when he exited the vehicle on South Rocheblave Street.
Detective Guy Swalm participated in the burglary investigation of January 13, 2009. His role was as a “take-down unit,” which he explained is a unit that actually makes contact with the individual or individuals being investigated. He testified that he received a radioed description from the surveillance units of the vehicle and of the subjects in the vehicle. He initiated a stop of the vehicle after being informed that the passenger had been observed by Detective Carter going |4into a side alleyway of a residence, coming out minutes later with an unknown object wrapped in a sweatshirt, walking to the vehicle that was now parked around the block and leaving the area quickly. Detective Swalm testified that a decision was made to stop the vehicle on the belief that the occupants of the vehicle had been involved in a burglary of a residence. He identified Mr. McCord as the driver of the vehicle, and Mr. Jackson as the passenger. On the floorboard of the vehicle, Detective Swalm observed a sweatshirt matching the one described by Detective Carter, a knit cap, a couple of pairs of gloves and “two hand-held, like walkie-talkie radios.” Other items in the vehicle included a screwdriver wrapped up in the sweatshirt, reflective vests, jewelry, silverware, portable memory devices used with computers, razor blades and a pocket knife. After confiscating the items in the vehicle, Mr. McCord and Mr. Jackson were placed under arrest. Photographs of the items taken from the vehicle were introduced into evidence at trial.
Detective Heather Gore testified that she participated in the burglary investigation on January 13, 2009. She had conducted surveillance in the area that day and noted the blue Suzuki with two men inside, but did not see either of the men exit the vehicle. However, she said the vehicle “passed me a few times and slowed down and looked down alleys,” which suggested to her that the occupants of the vehicle were “casing the area.” The officers involved in the surveillance radioed their observations of the vehicle to each *213 other. Detective Gore did not participate in the stop of the vehicle. After learning that two burglary suspects had been arrested and brought to the 2nd District police station, Detective Gore went there, where she and Detective Launey Beckham interviewed Mr. McCord and Mr. Jackson after they were advised of their rights.
[sAt the interview, Mr. McCord stated that on the day in question, he took Mr. Jackson to his ex-girlfriend’s house so Mr. Jackson could retrieve his belongings. He stated that he had only known Mr. Jackson for a few months. Mr. McCord told the officers that while he waited for Mr. Jackson, he rode around the neighborhood looking at houses because he does construction work. Mr. Jackson, on the other hand, told the detectives that he had only met Mr. McCord that morning at a Burger King restaurant, and Mr. McCord had asked him if he wanted to break into some houses. He said he got into Mr. McCord’s vehicle and they drove to South Roche-blave Street. According to Mr. Jackson, Mr. McCord selected the house located at 5419 South Roeheblave. The two men agreed that Mr. Jackson would break into the house and they would share whatever Mr. Jackson retrieved from the house. Mr. Jackson told the detectives that he attempted to gain entry into the house, but was unable to do so. He said the two men communicated with each other through walkie-talkie devices.
At trial, Michael Jackson testified that on January 18, 2009, he met Mr. McCord at a Burger King restaurant. Mr. McCord told him that he was a contractor, and Mr. Jackson told him he was looking for work. Mr. Jackson told Mr. McCord that he had been involved in some criminal activities in the past. He claims he left with Mr. McCord in his vehicle without knowing where they were going, but understood that the plan was to burglarize a home.[1] Before he exited the vehicle on South Ro-cheblave Street, Mr. Jackson said the two men talked about splitting any money they made together. He exited the vehicle with a screwdriver in his jacket pocket, and jumped two fences to get to the back of the house. He Rknew Mr. McCord was not going to break into the house with him; rather, Mr. McCord would stay in the vehicle and park nearby. He said when he dropped the screwdriver in the back yard, he became nervous and left the property. Mr. Jackson entered McCord’s vehicle and told him he was unable to break into the house. Shortly thereafter, the two men were stopped by the police.
Mr. Jackson admitted that he had prior convictions for burglaries and possession of stolen property. He also pled guilty in this case to a charge of attempted burglary of an inhabited dwelling.
Detective Launey Beckham testified that he and Detective Gore conducted the taped interview of Mr. Jackson on January 13, 2009 after Mr. Jackson was advised of his rights. Through that interview, Detective Beckham learned that Mr. McCord was the driver of the vehicle in which Mr. Jackson was a passenger on January 13, 2009. Mr. Jackson told the detectives that he met Mr. McCord that same morning for the first time at a Burger King restaurant. Mr. McCord offered him money to commit a burglary. Mr. McCord dropped Mr. Jackson off at 5419 South Roeheblave Street to burglarize the residence, and the two men had an agreement that they would split any property taken from the *214 location. Mr. Jackson told the detectives that he went to the back of the residence with a screwdriver, but was unable to gain entry.
The defense offered the testimony of Pamela McCord, the wife of the defendant. She stated that her husband is a contractor. She also stated that her husband uses walkie-talkie radios in his work as a contractor. She identified jewelry found in her husband’s truck as belonging to her or her husband. On the day of her husband’s arrest, he conveyed to her that Mr. Jackson was going to do some work for him, and he gave Mr. Jackson a ride to the house on South |7Rocheblave Street so he could retrieve some tools he said he needed for the job. According to Mrs. McCord, her husband had no knowledge of Mr. Jackson’s plans to commit a burglary on that day. Mrs. McCord admitted that she was not with her husband in the middle of the day on January 13, 2009.
Joseph Johnson testified that he did painting and contracting work, and was supposed to work for Mr. McCord on January 13, 2009, but could not because of an illness. Mr. Johnson suggested that Mr. McCord hire Mr. Jackson for the job that day. Mr. Jackson was an acquaintance of Mr. Johnson’s brother. He said Mr. McCord did not know Mr. Jackson prior to January 13, 2009. Mr. Johnson admitted having a conviction for possession of stolen property.
Dent Hunter testified that he is a licensed contractor. He said that Mr. McCord had worked for him in that past, and was supposed to do a job for him on January 13, 2009, but he never showed up. Mr. McCord was supposed to meet him at the job location in New Orleans East between 10:00 a.m. and 12:00 p.m.
A review of the record reveals no errors patent.
In his sole assignment of error, Mr. McCord argues that the evidence presented at trial was insufficient to convict him of attempted unauthorized entry of an inhabited dwelling. Specifically, he argues that the State failed to prove that he was a principal to the attempted unauthorized entry of the house at 5419 South Roche-blave Street, and failed to prove that he had the specific intent to enter the house. According to Mr. McCord’s brief, he was unaware of Mr. Jackson’s plan to commit a burglary, but instead thought that he was merely giving Mr. Jackson a ride to a residence to pick up some tools he had left behind.
|In State v. Brown, 2003-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18, the Louisiana Supreme Court set forth the standard of review for a claim of insufficiency of evidence, as follows:
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).
La. R.S. 14:62.3 defines “unauthorized entry of an inhabited dwelling” as “the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.” Thus, the elements of the crime of unauthorized entry of an inhabited dwelling are (1) that the accused *215 entered a dwelling; (2) that the dwelling did not belong to the accused; (3) that the dwelling was used in whole or in part as a home or place of abode; and (4) that the entry was not authorized. La. R.S. 14:62.8; State v. Nunnery, 04-1560, pp. 9-10 (La.App. 4 Cir. 12/8/04), 891 So.2d 67, 72. La. R.S. 14:27, which defines “attempt,” states that “[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.”
Because the State did not present evidence that Mr. McCord personally attempted to enter the dwelling at 5419 South Rocheblave Street on January 13, 192009, it had the burden of proving that he was a principal to the unauthorized entry attempted by Mr. Jackson. State v. Arceneaux, 05-338, p. 7 (La.App. 5 Cir. 12/27/05), 930 So.2d 44, 49. La. R.S. 14:24 defines “principals” as “all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime.” Accordingly, the jury in this case had to find beyond a reasonable doubt that Mr. Jackson attempted to make an unauthorized entry into the home located at 5419 South Ro-cheblave Street, and that Mr. McCord was someone concerned in the commission of that crime. State v. Arceneaux, supra at p. 8, 930 So.2d at 49.
Evidence presented at trial was sufficient to establish that Mr. Jackson attempted to enter the dwelling at 5419 South Rocheblave Street by trying to pry open the back door with a screwdriver. The testimony of Mr. Lapeyre sufficiently established that he is the owner of the dwelling located at 5419 South Rocheblave Street, that the dwelling is used as his family’s home, and that neither Mr. Jackson nor Mr. McCord were ever authorized to enter the home. Therefore, the elements of the crime of attempted unauthorized entry of an inhabited dwelling were proven in this case.
As for Mr. McCord’s main argument, that the evidence was insufficient to prove that he was a principal to the attempted unauthorized entry of an inhabited dwelling, we find no merit. The State did not need to prove that Mr. McCord personally intended to enter the house; it only had to prove that he was someone “concerned with the commission of the crime” in order for him to be found guilty as a principal to the attempted unauthorized entry. See State v. Arceneaux, 05-338 (La.App. 5 Cir. 12/27/05), 930 So.2d 44.
|10Mr. Jackson’s statement to the police and trial testimony, considered together, were sufficient to establish Mr. McCord’s participation as a planner of a burglary to be committed by Mr. Jackson, and as the driver of the getaway vehicle. Further evidence of Mr. McCord’s role as a principal in this case was presented through the testimony of Detectives Carter and Gore, which established that the vehicle driven by Mr. McCord slowed down several times while the occupants looked down alleys, and that Mr. McCord dropped Mr. Jackson off in front of the house at 5419 South Rocheblave Street before relocating around the block to wait for him before driving off. Viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence was sufficient to convince a rational juror that Mr. McCord was a principal to the crime of attempted unauthorized entry of an inhabited dwelling.
*216 For the reasons stated above, we affirm the conviction and sentence of the defendant, Kevin L. McCord, Sr.
AFFIRMED

. His trial testimony conflicted in some respects with his earlier taped statement to police, in that he denied at trial that he and Mr. McCord had specifically discussed a burglary plan or had used walkie-talkies to communicate when Mr. Jackson was at the South Roeheblave property.